IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RMA VENTURES, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>SUNAMERICA LIFE INSURANCE, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:03-CV-740 |

This matter comes before the Court on Defendants' Motion for Summary Judgment.[1] There are also two other outstanding motions – (1) Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment,[2] and (2) Plaintiff's Third Motion for Extension of Time[3] – that will be discussed below. For the reasons discussed below, the Court will grant Defendants' Motion for Summary Judgment, and deny as moot the Defendants' Motion to Strike and Plaintiff's Motion for Extension of Time.

---

[1]Docket No. 38.

[2]Docket No. 52.

[3]Docket No. 56.

I.      Background Facts

Plaintiff, RMA Ventures California, is a Utah partnership. Defendants are SunAmerica Life Insurance Company ("SunAmerica"), an Arizona corporation, and Midland Loan Services, Inc. ("Midland"), a Kansas corporation. On January 29, 1993, Plaintiff purchased real property located in Rancho Cordova, California. The property was encumbered by a first lien held by John Alden Life Insurance Company ("John Alden"). The loan was secured by a mortgage on the property for nearly six million dollars at 9.5% interest.

John Alden sent Plaintiff a letter ("First John Alden Letter"), dated January 27, 1993, that outlined the general terms and conditions of the loan.[4] The letter indicated that there would be a rate review on February 1, 1998, and provided for a $10,000 assumption fee. Approval of the loan was further conditioned upon payment of mortgage arrears by wire transfer of $103,529.02, no later than January 29, 1993. The letter also indicated that a "detailed commitment letter with specific terms and requirements" would follow shortly.[5] Plaintiff paid the assumption fee and completed the wire transfer.

On April 9, 1993, John Alden sent the promised detailed commitment letter ("Second John Alden Letter") to Plaintiff.[6] This letter outlined nineteen additional requirements to complete the assumption of the loan. The letter stated that if all of the requirements were not met by June 4, 1993, "the offer to assume contained in this letter will be void at the option of John Alden."[7] Plaintiff

---

[4]Docket No. 40, Ex. 9.

[5]*Id.*

[6]Docket No. 40, Ex. 10.

[7]*Id.* at 4.

never responded to the letter and did not fulfill many of the additional requirements to complete assumption of the loan, but did begin making payments on the loan.

Effective April 1, 1997, John Alden sold the loan to Defendant SunAmerica. Plaintiff was notified of the transfer and that Defendant Midland would take over responsibility for servicing the loan. By the end of 1997, Plaintiff commenced discussions with SunAmerica regarding renegotiating the Loan's interest rate to market levels by writing several letters requesting a rate reduction.

By June 1999, Plaintiff began looking for another lender to refinance the loan. Western Sierra Bank ("Western Sierra") agreed to refinance the Loan and a detailed commitment letter was sent to RMA Ventures on January 4, 2002.[8] In preparation for the pending refinance, Midland sent a loan payoff amount to RMA Ventures in the amount of $5,491,909.13, dated January 24, 2002. An updated loan payoff was provided on March 8, 2002, in the amount of $5,455,044.90. Plaintiff paid off the entire balance of the Loan to Defendant SunAmerica. Plaintiff asserts that Defendants' failure to adjust the interest rate to the market rate on February 1, 1998, cost Plaintiff approximately $440,000 in interest payments and expenses related to obtaining alternative financing.[9]

II.     Procedural History

Plaintiff filed suit on August 26, 2003.[10] Plaintiff asserts fifteen causes of action, all of which relate to Defendant's failure to adjust the interest rate of 9.5% to market rates on February 1, 1998.

---

[8] Docket No. 40, Ex. 14.

[9] Am. Compl. at ¶¶ 16-17 (Docket No. 9).

[10] Docket No. 1. Plaintiff later filed an Amended Complaint on July 28, 2005 (Docket No. 9).

Defendants filed this Motion for Summary Judgment[11] on July 30, 2007. Plaintiff motioned twice for extensions of time to respond to the summary judgment motion.[12] This Court granted both,[13] though the second extension was opposed by Defendants.[14] The second extension set the deadline for response on October 22, 2007.[15] On November 1, 2007, Plaintiff filed its Opposition.[16] However, on November 2, 2007, the docket was modified indicating that counsel would be filing a corrected copy of the Opposition. Defendants filed a Motion to Strike Plaintiff's opposition brief that same day.[17]

On November 5, 2007, Plaintiff filed a Third Motion for Extension of Time[18] and the corrected copy of the opposition brief.[19] On November 6, 2007, Defendants filed an Opposition to the third extension of time.[20] Defendants' Reply to Plaintiff's Opposition to Summary Judgment was filed on November 16, 2007.[21] On November 23, 2007, Plaintiff filed another Third Motion for

---

[11] Docket No. 38.

[12] Dockets No. 41 and 44.

[13] Dockets No. 43 and 46.

[14] Docket No. 45.

[15] Docket No. 46. Plaintiff submitted a prepared Order listing Thursday, October 25th and the due date. The Court changed the number to the 22nd but did not change the day to Monday.

[16] Docket No. 51.

[17] Docket No. 52.

[18] Docket No. 56.

[19] Docket No. 58.

[20] Docket No. 59.

[21] Docket No. 62.

4

Extension of Time.[22]

    III.    Discussion

        A.    Timing Issues

Preliminarily, the Court will address the Motion to Strike and the Motions for Extension of Time.

Defendants motioned the Court to strike Plaintiff's response for Plaintiff's failure to comply with the requirements of Rule 6(b) of the Federal Rules of Civil Procedure. Defendants argue that because Plaintiff was already granted two extensions of time and failed to meet the second deadline due to a calendaring error, the Plaintiff does not meet the "excusable neglect" standard. Defendants also argue that Plaintiff's Motion for Extension of Time should be denied on the same grounds. Defendants argue that they are prejudiced by the compressed time schedule in which to file their Reply due to the summary judgment hearing already being scheduled. Defendants also argue that they have been compelled to prepare for the summary judgment hearing and trial simultaneously. Plaintiffs argue that because the delay was only a matter of days, Defendants have suffered no prejudice. Plaintiff also cites several justifications for the delay. All are related to counsel's caseload.

Rule 6(b) states that a court may grant an enlargement of time after the original deadline has passed "where failure to act was the result of excusable neglect."[23] The determination as to what constitutes excusable neglect is

> at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the

---

[22]Docket No. 66.

[23]Fed. R. Civ. P. 6(b).

length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.[24]

In this case, the delay of nearly two weeks undoubtedly impacted Defendants. However, while Plaintiff's opposition brief could be stricken, the Court declines to do so. The issue is now fully briefed. The Court notes Defendants' contention that busy calendars and matters in other courts do not excuse attention to matters in this Court. The Court further admonishes Plaintiff's counsel for failing to meet the extension and for failing to adequately notify the Court until after the deadlines had passed. The Court will deny Defendants' Motion to Strike. Plaintiff's Motions for Extension of Time are moot.

      B.    Summary Judgment

Defendants filed for summary judgment on all claims. Defendants assert that (1) Plaintiff's claims are barred by the voluntary payment doctrine; (2) there is no enforceable agreement between Plaintiff and Defendant; and (3) if there is an enforceable agreement, Plaintiff is not a party to it and cannot sue to enforce it. Defendants also move for summary judgment on Plaintiff's misrepresentation claims (Counts VII and IX). Plaintiff argues that summary judgment is improper because (1) the voluntary payment doctrine does not apply; (2) Plaintiff was in privity of contract with SunAmerica; and (3) the facts demonstrate that SunAmerica misrepresented its intention regarding adjustment of the interest rate.

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[25] In considering whether

---

[24]*Pioneer Inv. Servs Co. v. Brunswick Assocs, Ltd. P'ship*, 507 U.S. 380, 395 (1993).

[25]*See* Fed. R. Civ. P. 56(c).

genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[26] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[27]

1. *Choice of Law*

Defendants cite both California and Utah law through its memorandum. Plaintiffs cite to California law throughout their brief and argue that California law applies to all claims under the most significant relationship test and pursuant to a choice-of-law provision in a deed of trust on the property.

In order to determine which law applies, the Court applies the conflict of laws rules of Utah, the forum state.[28] Utah has adopted the "most significant relationship" test set out in Section 188 of the Second Restatement of Conflicts of Laws as the rule to apply to a conflict of laws question in a contract dispute.[29] Under that test, in the absence of a choice of law provision, courts are to consider the following factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties.

In this case, the place of contracting was California. The Defendant SunAmerica is located in California and the agreement was undertaken in California. The agreement was negotiated by

---

[26] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[27] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[28] *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 887 (10th Cir. 1991).

[29] *Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 190 (Utah 1999).

mail and fax, however, John Alden (the company originally financing the mortgage) was in California. The mortgage is for real property in California. Moreover, the deed of trust that ultimately was incorporated into the promissory note on the mortgage specifies that California law shall govern. Thus, the Court will apply California law.

2. *Voluntary Payment Doctrine*

Defendants argue that because Plaintiff paid off the mortgage in full with a full knowledge of all the facts, they are barred from recovery by the Voluntary Payment Doctrine. Plaintiff argues that they overpaid the interest rate for a period of approximately four years while Defendants ignored repeated requests to adjust the interest rate in compliance with the terms of the First Alden Letter; thus, Plaintiffs were compelled to seek alternative financing to mitigate damages. Moreover, they were forced to pay off the entire mortgage without a downward adjustment for the overpayment of interest because they had new financing at a lower interest rate set up and could not afford to continue paying at the higher interest rate.

The Voluntary Payment Doctrine bars recovery of money voluntarily paid with a full knowledge of all the facts, in the absence of fraud, duress or compulsion.[30] Payments are considered voluntary even if made to avoid foreclosure so long as the threat of foreclosure is not made under a false claim.[31]

In this case, the First Alden Letter indicates a "Rate Review" would take place on February 1, 1998, but did not guarantee that an adjustment would be made. Plaintiff requested several times that the interest rate be adjusted but did not, at any time prior to this lawsuit, assert that the 9.5%

---

[30]*Leahy v. Warden*, 163 Cal. 178, 182, 124 P. 825 (Cal. 1912).

[31]*Leeper v. Beltrami*, 53 Cal. 2d 195, 204, 347 P.2d 12 (Cal. 1959).

interest rate was illegal, continuing to make payments for more than four years. Plaintiff also knew for more than a year prior to refinancing that Defendants were not going to adjust the payoff amount.[32] Thus, Plaintiff voluntarily made the payoff with full knowledge of the facts.

The Court disagrees with Plaintiff's argument that the Voluntary Payment Doctrine does not apply in this case. While the law cited by Defendant is, admittedly, very old case law, the newer cases and statutes cited by Plaintiff are inapposite.[33] Plaintiff makes a number of arguments related to officious payment of another's debt and unfair trade practices. However, these fail to address the applicability of the Voluntary Payment Doctrine. Thus, the Court finds that the Voluntary Payment Doctrine does apply here.

Plaintiff argues that even if the Voluntary Payment Doctrine does apply, payment of the mortgage was motivated by fraud, duress or compulsion. However, the Court finds that Plaintiff does not put forth sufficient facts demonstrating fraud, duress or compulsion motivated payment. Plaintiff admits that Defendants did not affirmatively misrepresent any facts. Defendant did not threaten foreclosure if payment was not made and a significant period of time elapsed after Plaintiff began searching for new financing in which Plaintiff knew that Defendant would not make a downward adjustment of the payoff amount. Thus, the Court finds that, based on the statements of the Plaintiff, payment was not motivated by fraud, duress or compulsion.

    3.    *Formation of the Contract*

---

[32] Depo. Robert Anderson at 65-66 (Docket No. 40, Ex. 5).

[33] California Bus. & Prof. Code § 17200 (code section dealing with unfair trade practices); 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 120 (discussing restitution when benefits are conferred officiously); *Morgan Creek Residential v. Kemp*, 153 Cal. App. 4th 675 (Cal. App. 2007) (discussing whether party is a volunteer in the context of equitable subrogation).

Defendants argue that the First John Alden Letter is an unenforceable agreement to agree because several key conditions are not spelled out clearly and there is reference in that Letter to a forthcoming detailed agreement. Defendants further argue that the Second Alden Letter is also unenforceable because Plaintiff failed to satisfy several conditions precedent. Plaintiffs argue that, as of January 27, 1993, only the unessential terms under which Plaintiff would assume the mortgage were left to be spelled out by the Second John Alden Letter. Further, because Plaintiff performed its responsibilities under the First Alden Letter by submitting the $10,000 assumption fee and the $103,529.02 wire transfer, the assumption was complete.

The Court finds that the question of whether or not a contract was actually formed is not a material fact because the mortgage was ultimately paid off by Plaintiff. The Voluntary Payment Doctrine would apply even if, as Plaintiff alleges, there was an enforceable agreement. Therefore, the Court need not address further the validity of the agreement under which payment was made.

4.   *Misrepresentation Claims*

Defendants argue that summary judgment should be granted against Plaintiff's misrepresentation claims because Defendants did not make any false statements to Plaintiff or withhold any information from Plaintiff in connection with the refinance transaction. Plaintiff contends that Defendants are liable for misrepresentation when they failed to communicate their unwillingness to adjust the interest rate.

Misrepresentation, under California law, means false representation, concealment or nondisclosure.[34]

Plaintiff admits that Defendants did not make any affirmative misrepresentations regarding

---

[34]*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 807 (Cal. App. 2007).

the interest rate adjustment.[35]  The Court is not convinced that the Defendants "actively concealed from Plaintiff"[36] Defendants' unwillingness to adjust the rate because Plaintiff knew for four years that Defendant was not making an adjustment to the rate and continued to pay the mortgage.  The Court is also not convinced that Defendants waited "until closing for a new loan was upon the Plaintiff"[37] to reveal their unwillingness to adjust the interest rate as Plaintiff admitted to knowing for more than a year that the rate would not be changed upon refinancing.  Thus, Defendants have shown that no issue of material fact exists that would preclude summary judgment on the misrepresentation claims.

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 38) be GRANTED.  It is further

ORDERED that Defendants' Motion to Strike (Docket No. 52) is DENIED.  Plaintiff's Motions for Extension of Time (Dockets No. 56 and 66) are denied as moot.

DATED   November 26, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[35] Depo. Robert Anderson at 61 (Docket No. 40, Ex. 5), Pl.'s Opp. at v (Docket No. 58).

[36] Pl.'s Opp. Brief at 23 (Docket No. 58).

[37] *Id.*