RONALD ADY, PLLC (USB 3694)
8 E. Broadway, Ste. 710
Salt Lake City, UT 84101
(801) 530-3122
(801) 746-3501 fax

Attorney for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| RMA VENTURES CALIFORNIA, a Utah partnership,<br><br>Plaintiffs,<br><br>v.<br><br>SUNAMERICA LIFE INSURANCE COMPANY and MIDLAND LOAN SERVICES, INC.<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH OR STAY EXECUTION OF JUDGMENT AGAINST PLAINTIFF'S RIGHT OF APPEAL**<br><br>**Case No. 2:03-CV-740 TS**<br><br>**Judge** Ted Stewart<br><br>**Magistrate Judge** David O. Nuffer |

Plaintiff RMA respectfully submits the following memorandum in support of it motion for a stay pending appeal.

Procedural History.

On December 10, 2007 this Court's final judgment was entered.

On April 11, 2008 a writ of execution was issued to the Defendants.

Defendants have now noticed a purported execution sale of the Plaintiff's right to appeal, scheduled for May 15, 2008.

The Tenth Circuit Has Ruled That The Right to Appeal Survives Execution On A Judgment

The 10th Circuit has ruled that "A judgment debtor who is unable or is unwilling to post a

supersedeas bond retains the right to appeal even if the judgment is executed."[1] Despite this explicit ruling the Defendants seek to cut off Plaintiff's right to appeal by employing state law execution procedures to acquire and then extinguish the Plaintiffs' federal right of appeal. But a federal right to appeal exists for the sole purpose of determining whether the judgment of the trial court, and any execution upon that judgment, should be reversed or modified. By definition then, a right to appeal exists for a reason which is antithetical to the judgment to be reviewed on appeal. Accordingly, it seems that one of the reasons a right to appeal survives execution of a judgment is that it is the right to appeal is a right which accrues concurrent with the entry of a final judgment, and thus is a statutory condition incorporated into every final judgment rendered by a federal district court.[2] Restated, a final judgment is conditioned on the right to appeal and so the scope within which that final judgment can operate is limited by the condition (the right to appeal) upon which that final judgment was granted.

As well, the use of the word "shall" in 28 U.S.C. 1291 refers to an appellate subject matter jurisdiction which is exclusively granted to the federal courts of appeal. Once that jurisdiction is invoked, a district court is without jurisdiction – whether by use of a writ of execution or otherwise – to terminate that appellate jurisdiction. Consistent with the exclusive jurisdiction of appellate courts to determine appeals, Rule 3(a) of the Federal Rules of Appellate Procedure refers to the right

---

[1] Strong v. Laubauch, 443 F.3d 1297, 1299 (10th Cir. 2006), citing Koster & Wythe v. Massey, 262 F.2d 60, 62 (9th Cir. 1958). Other courts of appeal have made similar rulings. See Porco v. Trustees of Indiana University, 453 F.3d 390, 394 (7th Cir. 2006)(failure to obtain a stay under Rule 62(d) does not ordinarily moot an appeal); In Re American President Lines, Inc., 779 F.2d 714, 718 (D.C. Cir. 1985)( per curiam)(failure to post bond leaves appellant vulnerable to enforcement of judgment, but does not forfeit right of appeal).

[2] See U.S.C. §1291 which, in part, reads: "The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . ."

to a appeal from the final decision of a district court as an "appeal as of right."

If Defendants were to employ state law execution procedures to extinguish Plaintiff's right of appeal it would contravene 28 U.S.C. 1291 which grants courts of appeal exclusive jurisdiction to determine (or terminate) appeals. It is undisputed that the Federal Rules of Appellate Procedure govern the prosecution of appeals. There is not even a hint in those rules or any statute that a federal district court has jurisdiction to enforce a final judgment by executing upon the right to appeal. Federal courts are courts of limited jurisdiction,[3] and unless such a jurisdiction is granted to a federal district court, it does not have that jurisdiction. Absent enabling legislation, the Defendants' attempt to employ a writ of execution to seize and sell the Plaintiff's right to appeal is, at best, ill-founded.

Review of the Federal Rules of Civil Procedure compels the same conclusion. Rule 64 of the Federal Rules of Civil Procedure provides that every remedy provided by state law where a judgment is rendered may be used in enforcing a writ of execution "[b]ut a federal statute governs to the extent it applies."[4] The federal statute which applies in this case is 28 U.S.C. 1291 and the Federal Rules of Appellate Procedure (which only grant district courts jurisdiction over matters collateral to the appellate process in a few limited circumstances[5]) promulgated to effectuate that grant of statutory authority. Because the Federal Rules of Appellate Procedure specifically identify those few instances where a district court can adjudicate matters collateral to an appeal, it follows that no other appellate jurisdiction should be implied in favor of a district court. Defendant cannot use a writ of execution issued out of this Court to execute upon, and thereby terminate, the appellate jurisdiction of a federal court of appeal.

---

[3]Kokkonen

[4]Rule 64(a) Fed. R. Civ. P.

[5]*See* Rules 7 & 8, Fed. R. App. P.

Apart from the subordination of state law remedies to federal law required by Rule 64(a), even the law of the State of Utah recognizes that there are limitations on the right to use a final judgment to execute on a right to appeal. A writ of execution is a remedy provided under the laws of the State of Utah[6] and Utah law specifically provides that "[a] writ of execution is available to a judgment creditor to satisfy a judgment or other order requiring the delivery of property or the payment of money by a judgment debtor."[7] But in fact Utah law does recognize that there are public policy limitations on the right to execute on a right to sue or a right to appeal.[8] Although under Utah law those public policy concerns do not generally defeat a judgment creditor's ability to execute upon a right to sue, Plaintiff has not been able to identify any Utah cases in which it has been held that a right to appeal can sold at an execution sale.

More importantly, Utah courts do not employ the Federal Rules of Appellate Procedure and federal courts are constrained in their jurisdiction by the Article III of the Constitution of the United States. There are federal constitutional limitations on the ability of a district court to burden the right to appeal, including the use of an execution sale to burden an appellant's right to appellate review.

Requiring the Appellant To Pay Appellee's Attorney Fees Incurred At Trial Unduly Burdens Appellee's Right to Appeal.

Making the right to appeal subject to execution and extinction by the very judgment which is to be reviewed on appeal violates the Fourteenth Amendment equal protection guarantee and the

---

[6]*See* Cheves v. Williams, 1999 UT 86, ¶54, 993 P.2d 191, 204 (Utah 1999), citing Ut. R. Civ. P. 62(a).

[7]Ut. R. Civ. P. 69(a).

[8]*See* Snow, Nuffer, Engstrom & Drake v. Tanasse 1999 UT 49, ¶¶13, 14, (finding that two primary policy concerns with allowing a judgment creditor to execute upon an opposing party's right to sue, and then purchase it at the execution sale, are that it deprives the judgment debtor of his day in court, and that it is impossible to fairly determine the value of the right to sue).

Fifth Amendment due process guarantee by unduly burdening the right to appeal. Although the right to appeal is a purely statutory right,[9] once an appellate right is granted, the constitutional principles of due process and equal protection have full application.[10]  These principles require that in practice an appeal process established by statute must be fairly and equally accessible to all litigants.

Nevertheless, the right to appeal may be limited by statute for purposes which do not offend principles of Equal Protection or Due Process fairness, so long as those limitations do not unduly restrict the right to appeal.[11] As shown above, there is no provision in any federal statute or in the Federal Rules of Appellate Procedure for a district court's issuance of civil process, including a writ of execution, to determine or terminate an appeal of the civil judgment at issue in this case. The only jurisdiction granted generally to a district court to burden the right to appeal accrues for the purpose of requiring a bond for costs on appeal.[12]  But in allowing limited restrictions on the right to appeal, the Supreme Court has found that "to require security for payment of any kind of costs, or the

---

[9]*See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court"); Heike v. United States, 217 U.S. 423, 54 L. Ed. 821, 30 S. Ct. 539 (1910) (federal right of appeal is purely statutory); see also 15A Wright, Miller, Cooper, Federal Practice and Procedure § 3901 n.2 (2d ed. 1991).

[10]*See* Lindsey v. Normet, 405 U.S. 56, 77, 31 L. Ed. 2d 36, 92 S. Ct. 862 (1972) ("When an appeal is afforded, however,  it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause.") *Cf.*  North Carolina v. Pearce, 395 U.S. 711, 724-725 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969).

[11]*See* Cohen v. Beneficial Loan Corp, 337 U.S. 541, 551-52, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949); *see also* O'Day v. George Arakelian Farms, Inc., 536 F.2d 856, 860 (9th Cir. 1976) (holding that Congress may in particular cases "condition the right to appeal upon posting security sufficient to protect appellee from loss of damages already awarded, interest, and costs on appeal, including a reasonable attorney's fee," but that a statute requiring the posting of a double bond as a condition of appealing a reparations award under Perishable Agricultural Commodities Act of 1930 was irrational and unconstitutional as applied).

[12]*See* Rule 7, Fed. R. App. P.

5

necessity for bearing any kind of expense of litigation, has a deterring effect."[13]

Undue restrictions on the right to appeal may be invalid facially,[14] or as applied.[15] Lindsey is instructive on the issue of facial invalidity of a restriction on the right to appeal. There a state statute requiring a lessee who wished to appeal to file a bond in the amount of twice the rental value of the premises involved was found to "heavily burden[] the statutory right . . . to appeal," and so was nullifed by the Supreme Court.[16] In particular, the double-bond requirement did not advance a reasonable requirement of adequate security to preserve an award already made and protect appellees from loss during appeal,[17] because it "bars nonfrivolous appeals by those who are unable to post the bond and allows meritless appeals by others who can afford the bond."[18] Thus, the requirements of security for appeal to protect appellees are valid only if "reasonably tailored to achieve these ends and uniformly and nondiscriminatorily applied."[19] In any event, security of this type can never be mechanically imposed because this would invariably discriminate against litigants without the means to post a bond.[20] So unless a limitation on the right to appeal is rationally related to securing the risk involved, the limitation will be an unconstitutional denial of equal protection.[21]

---

[13]Cohen, 337 U.S. at 552.

[14]See Lindsey, 405 U.S. at 77-79; O'Day, 536 F.2d at 861.

[15]See Clark v. Universal Builders, Inc., 501 F.2d 324, 341-42 (7th Cir.), cert. denied, 419 U.S. 1070, 42 L. Ed. 2d 666, 95 S. Ct. 657 (1974).

[16]405 U.S. at 77.

[17]Id. at 77-78.

[18]Id. at 78.

[19]Id. at 79.

[20]Id.

[21]O'Day, 536 F.2d at 861.

In <u>Boddie v. Connecticut</u>[22] the Supreme Court found that an otherwise valid state statute imposing fees for commencing a divorce violated the Due Process Clause of the Fourteenth Amendment.[23] The <u>Boddie</u> appellants' undisputed inability to pay the costs, when considered in light of their undisputed good faith in seeking divorce caused the court to find that the statute was unconstitutional when applied in these circumstances. And a district court's burdening of the right to appeal by ordering that "there would be no costs assessed [under Rule 54(d)] against those who do not appeal," was struck down in <u>Clark</u>[24] by the Seventh Circuit which overturned this order, stating "although the district court has discretionary power to assess costs, the action it took was improper and clearly an abuse of discretion. . . . Any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated."[25] Moreover, in <u>American Presidential Lines</u>, the D.C. Circuit held that the district court exceeded its authority in requiring a $ 10,000 cost bond under Rule 7 alone without sufficient justification.[26]

Applied to the case sub judice, it is apparent that the practical effect of allowing the Defendant to hold an execution sale of the Plaintiff's right to appeal is to condition the Plaintiff's right to appeal upon its payment of the SunAmerica's attorney fees of over $80,000.00. As the Utah Supreme Court found in <u>Tannasee</u>, because it is impossible to value such a right, the practical effect of the execution sale of Plaintiff's right to appeal is to provide SunAmerica with a means for extinguishing that right unless the Plaintiff pays the full amount of the judgment for SunAmerica's

---

[22]401 U.S. 371, 382, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971).

[23]401 U.S. at 382.

[24]<u>Clark</u>, 501 F.2d at 341.

[25]<u>Id.</u>

[26]779 F.2d at 718-19.

attorney fees.

SunAmerica's judgment in this case consists solely of its claim for attorney fees incurred at trial. To paraphrase <u>Lindsey</u>, payment of those fees bears no rational relation to preserving the SunAmerica's interest in securing that award of attorney fees because requiring RMA to pay those attorney fees to preserve its right to appeal that judgment does "not advance a reasonable requirement of adequate security to preserve an award already made and protect appellees from loss during appeal,[27] because it "bars nonfrivolous appeals by those who are unable to post the bond and allows meritless appeals by others who can afford [to pay such attorney fees and thus avoid execution]."[28]

<u>The Purported Execution Sale Should Be Quashed or Stayed Without Bond or Only a Nominal Bond</u>

This Court has inherent power to supervise its own process. Plaintiff has shown above that the purported execution sale is facially invalid and in fact, as explicated above, is being prosecuted outside of the scope of the execution remedy available to Plaintiff under Rule 64(a)(1). Accordingly, the Court should issue an order quashing that execution sale.

Alternatively, Rule 62(d) provides for the stay of execution of a final judgment pending appeal by posting a supersedeas bond. But Plaintiff is not seeking a stay of the Defendant's writ of execution generally, but only a stay of its execution sale against the Plaintiff's right to appeal.

A requirement that Plaintiff post any bond beyond a nominal bond would burden the Plaintiff's right to appeal in the very manner condemned in <u>Lindsey</u> and would flout the holding of the 10th Circuit in Strong v. Laubach that a right to appeal survives execution even where no bond

---

[27]405 U.S. at 77-78.

[28]<u>Id</u>. at 78.

is posted. The 10th Circuit in <u>Olcott v. Delaware Flood Co.</u>[29] held that a bond posted under Rule 62(d) could be for less than the full amount of the judgment, and in this case only a nominal bond should be required.

As well, Plaintiff has a meritorious appeal. <u>Leeper v. Beltrami</u>[30] clearly establishes that Plaintiff was subjected to duress when it paid the amount recited in the March 31, 2002 payoff statement.  Economic duress can arise when a party must protect a property interest.[31]  For example, a cloud on the title to a property that can only be effectively removed by paying the demand necessary for that removal and then suing to recover the amount paid, qualifies as economic duress.[32] That is exactly what Plaintiff did here.

In the case sub judice, the claim of the Defendants in the payoff statement to the excess interest accruing February 1998 constituted a cloud on the title to the subject property, which brings the Plaintiff's claim within this rule as stated in <u>Leeper</u>.  In doing so, <u>Leeper</u> presents facts which are closely analogous to those in this case.  Just as in this case, the Plaintiffs in <u>Leeper</u> complained of a situation where a mortgagee was falsely claiming more than was due under the mortgage.  This rule was further extended by the California Supreme Court, sitting en banc, in the case of <u>Paramount</u>

---

[29]76 F.3d 1538, 1559 (10th Cir. 1996).

[30]53 Cal.2d 195, 347 P.2d 12 (1959) (en banc).

[31]*Id.* at 203 where the court ruled: Under modern law duress is not limited to threats against the person. It may also consist of threats to business or property interests. Sistrom v. Anderson, 51 Ca.App.2d 213, 220-221, 124 P.2d 372; 5 Williston on Contracts, 4517-4518, s 1617; 40 Cal.L.Rev. 425;Restatement of Contracts, s 493. The modern doctrine has been recognized in California.Young v. Hoagland, 212 Cal. 426, 430-431, 298 P. 996, 75 A.L.R. 654;Thompson Crane & Trucking Co. v. Eyman, 123 Cal.App.2d 904, 910-911, 267 P.2d 1043.

[32]*Id* at 203: "It has been held that one who falsely clouds the title to real property and then seeks some consideration to remove the cloud is guilty of a wrongful act and may be compelled to restore the consideration recovered by him. Wake Development Co. v. O'Leary, 118 Cal. App. 131, 4 P.2d 802;Ezmirlian v. Otto, 139 Cal.App. 486, 34 P.2d 774;McNichols v. Nelson Valley Bldg. Co., 97 Cal.App.2d 721, 218 P.2d 789."

Properties Co. v. Transamerica Title Ins. Co.[33] where the court explicated the rule that because a quiet title action may require litigation of considerable duration, a title claimant is permitted to first pay off an adverse claimant and then sue, the court specifically holding that the threat of extended litigation constitutes duress.

At issue in Paramount was a claim against the plaintiff insured (Paramount) by a third party who had settled litigation regarding title to the real property at issue by paying to legal counsel retained by the title insurer, the amount claimed in the litigation, thus allowing title to be cleared; and then after having cleared the title suing the plaintiff insured to recover the amount paid in duress. The California Supreme Court found that this claim of duress due to the threat of litigation of considerable duration was cognizable at law, and cited Leeper in support of that holding.

Applied to the present case, Plaintiff has already argued that threat of litigation can be a factor amounting to duress, noting that had the Defendants been candid in February of 1998 and not concealed their true intentions, litigation might have been timely commenced.  By March or January of 2002 it was too late for the Plaintiff to resolve its claims by litigation. Instead, it must, as the Paramount court recognized, clear the title to the subject property and then sue to recover the overpaid interest.[34]  In this case, Plaintiff has testified that it had great difficulty keeping current on

--------

[33]1 Cal.3d 562, fn. 4, 463 P.2d 746 (1970), which reads: "An adverse claim to property may of course constitute a substantial cloud on the title and may even render the title unmarketable. Because the maintenance of a quiet title action may vinolve [sic] litigation of considerable duration, an owner who is attempting to sell land may be extremely vulnerable to harassment by persons fraudulently purporting to hold adverse claims. To extricate an owner from this vulnerable position and to aid in the marketability of property, a title claimant is permitted first to pay off an adverse claimant in order to clear title and then subsequently to institute a suit for refund against the allegedly fraudulent claimant on the grounds that the original payment was made under duress. (Cf., e.g., Leeper v. Beltrami (1959) 53 Cal.2d 195, 1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803.)"

[34]See also Rich & Whillock, Inc. v. Ashton Development, Inc. 157 Cal.App.3d 1154, 204 Cal.Rptr. 86 (1984), a case where the defendant knowing there was no justification for doing so

the monthly payment due on a 9.5% mortgage and that the prospect of having to pay an additional $100,000.00 per year in interest unless it closed on the new loan put great pressure on the Plaintiff to close on the new loan with Roseville Bank.

Plaintiff has made a clear, undisputed showing of duress and it has a meritorious appeal.

Conclusion

The Defendant SunAmerica's attempted use of an execution sale to "sell" RMA's right to appeal is, in effect, an attempt to execute upon the appellate jurisdiction of the 10th Circuit Court of Appeals, which jurisdiction exists independent of the jurisdiction of this Court to enforce the judgment in favor of the Defendant SunAmerica. The 10th Circuit has ruled that a right to appeal survives judgment and the Defendants' attempt at an execution sale not only contravenes that case authority but also the jurisdictional limits imposed upon this Court's appellate jurisdictional by statute and rule. As well, employment of a writ of execution unduly burdens RMA's right to appeal because there is no rational relationship between the burden imposed and the preservation of SunAmerica's right to attorney fees. Such a requirement is irrational because it does nothing to prevent persons with meritless appeals, but who have the funds to pay such attorney fees awards and thus avoid execution, from prosecuting their appeal. Finally, this Court has inherent authority to quash the execution sale, as well as the authority to stay granted under Rule 62(d), and this is a manifestly clear case for the exercise of this Court's jurisdiction to quash or stay that execution sale.

DATED this 8th day of May, 2008.

---

forced a plaintiff's to reduce its well founded claim to an additional $72,000.00 due on a construction contract by instead signing an unconditional release under which it accepted payment of only $50,000.00 as payment in full. In awarding the plaintiff the additional $22K sued for, the court held that the release did not operate because the plaintiff's financial circumstances were such that it had no choice other than to accept the lesser sum. This economic duress voided the release.

Respectfully submitted,

/S/
_____
RONALD ADY,
Attorney for the Plaintiff RMA


CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, 2008, a true and correct copy of the foregoing document was electronically filed with the Clerk of court using the CM/ECF system which sent notification of such filing to the following:

George Pratt
Jones Waldo Holbrook & McDonough
170 S. Main St. #1500
POB 4544
SLC, UT 84101
gpratt@joneswaldo.com


DATED this 8th day of May, 2008.


/S/
_____
RONALD ADY